**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| Laurel C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18 CV 50196 |
| ) | Magistrate Judge Lisa A. Jensen |
| Andrew Saul, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER[1]

This is a Social Security disability appeal. Plaintiff Laurel C., who is now 49 years old, stopped working full-time in 2012 because of a combination of physical and mental problems.[2] Her physical impairments include degenerative disc disease, fibromyalgia, chronic pain syndrome, and residuals from two right carpal tunnel releases. R. 15, 43. These problems allegedly make it difficult for her to fully use her hands and arms, with the right side being the one most affected. She is right-handed. She also claims that she cannot stand or sit or walk for more than 15 minutes at a time. Her mental impairments are anxiety, depression, and borderline personality disorder. She has had a history of not getting along with people, including with her husband. Plaintiff's mental impairments allegedly would make it difficult for her to stay focused throughout an 8-hour work shift and would cause problems with absenteeism.

On February 16, 2017, the administrative law judge ("ALJ") held a hearing. Ellen Rozenfeld, a psychologist, testified about plaintiff's psychological limitations. One of plaintiff's arguments here is based on a portion of this testimony. No expert was called to testify about

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.
[2] Her past jobs included food server, salesperson, bartender, bar manager, and substance abuse counselor. R. 314.

1

plaintiff's physical limitations. At the end of the hearing, a vocational expert ("VE") testified by answering hypothetical questions about the types of jobs that would be available for a person with limitations similar to plaintiff's.

On April 12, 2017, the ALJ issued a written decision finding plaintiff not disabled. The ALJ agreed that plaintiff had some physical and mental limitations, but did not believe they were as severe as plaintiff alleged and found that she had the capacity to work as a hotel housekeeper or sales attendant. Translated into the parlance of Social Security law, the ALJ found that plaintiff had the residual functional capacity ("RFC") to do light work, subject to numerous restrictions, and further found that a person with this RFC could do these two jobs. The latter finding was based on the VE's testimony.

Although plaintiff raises several arguments for a remand, her main argument—and one that this Court finds justifies a remand—is based on the VE's testimony, specifically one ambiguous answer. This answer, loosely paraphrased for now, was that plaintiff could work as a hotel housekeeper or sales attendant using mostly her left arm and hand. Plaintiff argues that this answer was confusing and conflicted with the Dictionary of Occupational Titles. The DOT has been described as "the Bible of vocational experts." *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010).

Because this argument is narrow, focusing solely on the VE's testimony at Step Five, we can omit the traditional background summary of plaintiff's medical history. We can likewise skip over the ALJ's credibility analysis, as well as the analysis of the medical opinions. Instead, we can go right to the ALJ's Step Four RFC finding. An RFC finding represents an ALJ's translation of plaintiff's medical functional capacities into the vocational-legal framework. The ALJ must first place the claimant into one of five exertional categories (sedentary, light,

medium, heavy, or very heavy work). Then, if needed, further restrictions and limitations are added. In this case, the ALJ found that plaintiff could do "light work" subject to various restrictions. The complete RFC is set forth below:

> **5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift 10 pounds maximum with the dominant, right upper extremity and perform no repetitive fine motor movements with the right upper extremity and may occasionally handle/finger with the dominant right upper extremity and frequently handle/finger with the non-dominant left upper extremity. The claimant may not climb ladders, ropes, or scaffolds but may occasionally climb ramps and stairs. She may frequently stoop, kneel, crouch, and crawl, but must avoid concentrated exposure to extreme temperature changes and concentrated exposure to hazards, including dangerous moving machinery and unprotected heights. The claimant is capable of understanding, remembering and performing simple and detailed instructions and tasks with sufficient concentration, persisting, or pace to timely appropriately complete such tasks. She may have occasional contact with coworkers, supervisors and the general public and may have occasional workplace changes.**

R. 18. Plaintiff's argument relates to only one part of this paragraph, which is the limitations on handling and fingering for both the right and left arms and hands, referred to in the paragraph above as the upper extremities.[3] Before looking more closely at these two limitations, it is worth noting that they are only one part of a longer list of limitations, affecting a wide variety of body systems and activities. The RFC not only addresses diverse activities, it also includes differing temporal restrictions, using the pre-set terminology of disability law. Some activities can only be done "occasionally" (defined as very little of the time up to one-third of the work day) whereas other activities can be done "frequently" (one-third to two-thirds of the day). And some activities could not be done at all. For example, plaintiff could do "no repetitive fine motor movements with the upper extremity." In short, this RFC is a complex amalgam of competing limitations. As we look closer at these two specific limitations, it is important to remember that the VE would

---

[3] Several different terms (arms, hands, extremities) are used in the record and briefs. There does not appear to be any material distinction between them, and the Court has used them interchangeably.

have had to consider *all* these many limitations and how they worked together when deciding whether plaintiff could perform the relevant duties for an entire day.

The Court will now consider the VE's testimony. As is customary, at the hearing, the ALJ posed a series of increasingly restrictive hypotheticals to the VE. Depending on how you count them, there were somewhere between five to seven. Each time, the VE opined that the hypothetical claimant could do at least the jobs of hotel housekeeper and sales attendant. The VE identified these two jobs based on their DOT code—*i.e.* hotel housekeeper (323.687-014) and sales attendant (299.677-010). In one hypothetical, the ALJ added the handling and fingering limitation, which was that plaintiff could do these activities "frequently" in both arms and hands. Then, in the last hypothetical, the ALJ changed this limitation to "occasionally," with the limitation again being the same for both hands. In response to this last hypothetical, the VE stated for the first time that no jobs would be available.[4] In other words, this final change in the hypothetical—from frequent to occasional handling—was the straw that broke the camel's back.

At this point, the ALJ turned the questioning over to plaintiff's counsel who proposed a modified hypothetical based on the ALJ's last hypothetical. The following colloquy ensued:

> Q Picking up on the last question, Ms. Edinburgh, if the limitation is *occasional[ly]* handle and finger with the *dominant* upper extremity and *frequently* with the *non-dominant*—it's a little bit different than what Judge Lewin just asked. Would that allow for the jobs you've identified?
>
> A I think at that point you could probably keep or not probably—you would be able to—the sales attendant, the hotel housekeeper. Those are jobs that as long as you've got one arm where you're pretty—where there's pretty much okay. You know, not—
>
> ALJ: You said—what were the two jobs?

---
[4] In these answers, the VE did not discuss the DOT, nor provide any explanations. Her answers were basically "yes" and "no."

> VE: The sales attendant, the hotel housekeeper. I don't think that—and you use the other hand as an assist.

R. 92 (emphasis added). The questioning then proceeded to other issues not relevant here.

Plaintiff's argument centers on two phrases—that the left arm was "pretty much okay" and that the right arm could be used as "an assist." Plaintiff raises two main criticisms. The first is that the VE's answer conflicted with the DOT. But plaintiff also makes a second, more general criticism. It is that the phrases are vague. Under either theory, the ALJ was obligated to ask additional clarifying questions, according to plaintiff. The Government's main argument is that, even if there were ambiguities in the VE's answer (and it is not clear whether the Government believes there were any), plaintiff's counsel had the opportunity to clarify them through cross-examination, but chose not to do so. In short, this is a waiver argument.

As explained below, the Court finds that the first argument presents a close call due in large part to uncertainties in the case law. However, because the Court finds that a remand is appropriate under the second argument, the Court need not reach a definitive resolution of the first argument, although the Court will discuss some of the issues raised by it.

This general issue of a possible conflict between a VE's testimony and the DOT has been litigated often, going back for at least several decades. *See, e.g.*, *Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002) (this issue "is not so easy to deal with" and courts "disagree about the appropriate interaction" between the DOT and the VE). In 2000, the Agency attempted to bring some order to this question by issuing SSR 00-4p. This regulation states, in relevant part:

> **The Responsibility To Ask About Conflicts**
>
> When a [vocational expert] provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between [the vocational expert] evidence and information provided in the DOT. In these situations, the [ALJ] will:

- Ask the [vocational expert] if the evidence he or she has provided conflicts with information provided in the DOT; and

- If the [vocational expert's] evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict.

As indicated by the bullet points, the ALJ has two basic obligations. The first is the "affirmative responsibility" to ask about "any possible conflict" with the DOT. The second obligation, which is triggered if the VE's testimony "appears" to conflict with the DOT, is to resolve that conflict by eliciting a "reasonable explanation" for it. Even now, many years after this regulation was issued, courts continue to struggle with this issue. *See generally* Carolyn A. Kubitschek and Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Court*, p. 519 (2019 ed.) ("Despite the seemingly clear requirements of Soc. Sec. Rul. 00-4p, there is conflict among the circuits about the precise boundaries of the ALJ's affirmative duty.").

Turning to the facts of the present case, there is no dispute that ALJ never asked the VE about a possible DOT conflict. One consequence of this failure is that we do not now know the VE's position on whether she believed that her own testimony conflicted with the DOT and, if so, what authorities she was relying on to reach a conclusion contrary to the DOT. Although the ALJ did not raise this issue with the VE at the hearing, in the later written decision, the ALJ recognized that this issue should have been addressed and did so by adding the following conclusory sentence: "Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." R. 27. The ALJ did not identify what, if any, possible conflicts had been considered.

One could stop here and assess whether the ALJ violated this first duty in SSR 00-4p by failing to simply ask the general question whether the VE believed her testimony conflicted with

the DOT.[5] But we need not answer this question because a second layer of complexity arises from the fact that plaintiff was represented by counsel at the hearing. This leads to the Government's waiver or forfeiture argument and takes us beyond the language of SSR 00-4p and into Seventh Circuit case law. The Government argues that plaintiff's counsel could have asked follow-up questions or could have called an independent expert to rebut the VE. According to the Government, counsel's failure to take either step absolved the ALJ of any error. The Government relies principally on the Seventh Circuit's 2002 decision in *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled accept the vocational expert's conclusion.").[6]

After the Government raised this argument, plaintiff in her reply brief responded to it by citing a later Seventh Circuit case—*Overman v. Astrue*, 546 F.3d 456 (7th Cir. 2008). In that case, the Government relied on *Donahue* and made a similar argument to the one it makes here. The Seventh Circuit rejected this argument, at least initially, by first noting that SSR 00-4p places an "affirmative duty *on the ALJ* to inquire into and resolve apparent conflicts." *Id.* at 463 (emphasis in original). Given this language, the Seventh Circuit held that the failure of the claimant's counsel "to raise a possible violation of SSR 00-4p at the administrative level does not forfeit the right to argue later that a violation occurred." *Id.* However, the Seventh Circuit went on to qualify this holding by declaring that the failure of the claimant's attorney to object at the hearing should not be "without consequences." *Id.* The Seventh Circuit then set forth a new standard, holding that the claimant "now" can only avoid waiver in this situation by arguing that "the conflicts were obvious enough that the ALJ should have picked up on them without

---

[5] At a minimum, it would seem wise for an ALJ to ask this question in every case no matter how boilerplate it might seem.
[6] In addition, the Government cites to a 1990 case from the Eighth Circuit and a 2002 case from the Sixth Circuit.

7

assistance." *Id.* The Seventh Circuit then found, under the facts of that case, that two "apparent discrepancies" met this obviousness standard. *Id.* at 463-64.[7]

Aside from *Donahue* and *Overman*, which were only mentioned in a passing citation in the briefs and which were not further analyzed, the parties do not cite to any additional cases addressing the question of when a conflict—whether actual, possible, or apparent—should be deemed obvious. Instead, plaintiff relies only on arguments based on common sense and "simple logic." Dkt. #21 at 5. According to plaintiff, the conflicts here were "glaringly obvious." *Id.* This argument is based on an examination of the job duties listed in the DOT for housekeeper.[8] Here is the DOT description plaintiff is relying on:

> Clean rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of [the] following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets.

DICOT 323.687-014; Dkt. #18-1. In her opening brief, plaintiff asks this Court to imagine how a person with only one hand would go about doing tasks such as making beds or hanging drapes or moving furniture:

> It is difficult to foresee how one is expected to make a bed utilizing only one hand when one must lift the bed, tuck the fitted sheet around each corner, put on the top sheet and tuck it around three sides, then put on the comforter and pillows. This must be done repetitively throughout the day. Folding towels and other items presents a similar issue. Is Claimant expected to fold one handed? How frequently? How fast?

---

[7] Because *Overman* is the later case and because it partially rejects the very argument the Government makes here, the Government should have at least acknowledged the case in its brief.
[8] In their briefs, the parties only briefly touch upon the job of sales attendant, and the Government has not argued that this Court should affirm the ALJ's decision if it rested solely on that one job. Therefore, the Court will only analyze the housekeeper position, which is the approach taken by the parties as well.

Dkt. #11 at 12. In her reply brief, she veers toward mild sarcasm in emphasizing this point: "Surely the ALJ has made a bed, cleaned a room, or even stayed in a hotel room before." Dkt. #21 at 5.

But despite the surface simplicity of this argument, it is difficult to assess for several reasons. As noted above, the parties have provided little in the way of relevant case law; in particular, plaintiff has not cited to authority stating that this Court (or the ALJ) is permitted to rely solely on common sense. This is not to say that such an argument necessarily could not be made, just that plaintiff has not done so.[9] However, caution is warranted in too readily making assumptions about what a person could do with one arm. *See, e.g., Jones v. Shalala*, 10 F.3d 523, 526 (7th Cir. 1993) (possessing only one arm—even a non-dominant arm—does not make a person disabled). Another barrier is that the VE was never asked about a possible conflict. So we do not have the benefit of her opinion or that of any other expert. Yet another difficulty lies in the fact that the alleged conflict is not direct or explicit. Instead, it is an implied argument based on the DOT's silence. Plaintiff believes that the job duties listed in the DOT would necessarily require the full use of both arms on a fairly consistent basis. But the DOT does not indicate, one way or another, whether both arms must be fully functional to perform the duties being described. The interpretative problem created by the DOT's silence on this issue has been noted by courts. *See, e.g., Hill v. Colvin*, 807 F.3d 862, 871 (7th Cir. 2015) (J. Posner, concurring) ("The question of how to incorporate a limb restriction into a description of work capability in the Dictionary of Occupational Titles has been a recurring issue[,] and remains unresolved.").

---

[9] In this Court's own independent research, which was relatively brief and certainly not exhaustive, it came across cases where this type of common sense analysis was relied on. *See, e.g., Diaz v. Berryhill*, 2018 WL 1187530, *3 (C.D. Cal. Mar. 7, 2018) ("The Court finds that [the RFC] limitation is at odds with the DOT descriptions and what common experience would dictate the work of a motel cleaner.") (relying on same DOT description as here).

9

Rather than attempt to reach a definitive answer to the question of whether there is an obvious conflict in this case, this Court finds that a remand is justified based on plaintiff's alternative argument, which is the more basic claim that the VE's answer was vague and ambiguous. In fact, this vagueness is yet another reason why it would be hard for this Court to resolve the first argument with any confidence. In *Overman*, the Seventh Circuit, after analyzing the DOT-conflict issue as summarized above, went on to find that a remand could be ordered on the alternative ground that the VE's testimony was generally "flawed" and not "reliable." 546 F.3d at 464, 465 ("Because the ALJ's ruling was premised entirely on testimony that conflicted with the DOT *and otherwise was vague and confusing*, this case must be remanded for further proceedings") (emphasis added); *see also Ray v. Berryhill*, 916 F.3d 486, 492 (7th Cir. 2019) (among other problems, the VE's "testimony is ambiguous"). Relatedly, there is also the often-expressed requirement that the reviewing Court must be able to follow the path of the ALJ's reasoning. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

Based on these general requirements, this Court finds that the VE's testimony was vague or ambiguous on this more basic level of simply understanding what the VE's position was, without yet getting to the deeper question of whether it was correct or not. As a preliminary matter, the VE's answer was hesitant at the outset. She began by going back and forth ("probably keep or not probably"), as if she were unsure of her answer. More substantively, her answer to the RFC hypothetical, which used the phrases "occasionally" and "frequently," introduced new and imprecise terminology. There was thus a disconnect between the question and answer. This creates uncertainty about what the VE meant. One possible interpretation is that the phrases "pretty much okay" and "an assist" were simply rough translations of the technical terms

"frequently" and "occasionally." If so, then the VE's answer could be viewed as merely an inartful and roundabout way of basically answering "yes" to the question.[10]

But another possibility is that the VE was changing the hypothetical by modifying it in some way. Up until this point in this opinion, this Court has used hedge words, such as "mostly," to refer loosely to the general fact that the ALJ found that the left and non-dominant hand would be doing *more* of the work. But at some point the details become important. The VE's answer raises the possibility that the left arm and hand would be doing all of the work, except for the somewhat vague notion of an "assist." In plaintiff's opening brief, she goes through some of these unresolved interpretative possibilities:

> The VE did not define what she meant by "pretty much okay." The ALJ failed to follow up to clarify what the VE meant. The VE could have meant the job could be performed if the other arm had no impairment, or an impairment that limited the arm to frequent or occasional work. It is also what kind of "support" the VE believed would be necessary with the other hand. She could have meant the other arm was only necessary for balance or stabilization. Or she could have meant the other hand would be necessary for gripping, pushing, or more substantial exertion. The VE failed to make herself clear and the ALJ failed to clarify.

Dkt. #11 at 11. In its brief, the Government does not provide any substantive response, but instead insists that the VE's statements were "clear and unambiguous," "entirely consistent," and "straightforward." Dkt. #18 at 6. But the Government does not respond to the specific ambiguities raised by plaintiff. The Court finds that the ambiguities were sufficiently apparent that the ALJ should have probed further. Although the VE's answer was only a small portion of her overall testimony, it was nonetheless important because it addressed the specific RFC that

---

[10] Even if this interpretation were correct, then it would just move the analysis to the second, deeper question of whether the hypothetical itself was consistent with the DOT. And on this question, as noted above, the VE would have had to consider all the various limitations together. Among other things, as plaintiff points out, the VE was not asked whether a claimant with this many limitations truly could have performed all the types of housekeeper jobs included within the DOT classification. *See Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016) ("And because the ALJ declined to pose any follow-up questions on the subject, we are left without any additional information about the approximate percentage of the greeter positions that can be performed in a sedentary manner. Perhaps it is 95%; or perhaps it is closer to 9%, which would be an insufficient ground for trumping the DOT.").

the ALJ later adopted. In sum, to borrow the words of Justice Kagan, the VE's answer was "iffy on its face." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1156 (2019). It remains true, as the Government has repeatedly emphasized, that plaintiff's counsel could equally be faulted for this problem. Plaintiff's current counsel, who was not the counsel at the hearing, concedes that counsel "could have done better in his questioning." Dkt. #21 at 5. No one would dispute that point. But for all the reasons stated above, the Court finds that, on this critical question, the VE's answer contained sufficient warning signs to trigger the ALJ's independent duty to investigate.

For these reasons, the Court finds that a remand is required. Given this holding, the Court does not need to resolve plaintiff's other remaining arguments. Plaintiff argues that the ALJ failed to fully account for plaintiff's mental limitations in both the RFC and the hypothetical questions by, among other things, not crediting Dr. Rozenfeld's statement at the hearing that plaintiff had a "marked" limitation in memory and concentration. Dkt. #11 at 10.[11] Plaintiff also argues that one of her primary treaters, nurse practitioner Katherine Schenck, opined that plaintiff had numerous imitations that, if accepted, would have led to a finding that plaintiff could not work. In general, the Court found these arguments somewhat less compelling than the argument relied on above. However, on remand, the ALJ should fully consider all these arguments, as well as any others that have not been addressed herein, and plaintiff should specifically raise all such arguments to the ALJ at a new hearing to avoid a finding of waiver if this case is again appealed to this Court. The ALJ should also consider calling a medical expert to opine about plaintiff's physical limitations.

---

[11] In this instance, there is again some ambiguity in the testimony, as Dr. Rozenfeld did not definitely state that plaintiff's concentration problem was "marked," but merely that she "can see it rising to marked." R. 83.

## CONCLUSION

For the above reasons, plaintiff's motion for summary judgment is granted, the Government's motion is denied, and the case is reversed and remanded for further proceedings.

Date: November 26, 2019     By: _____
                                Lisa A. Jensen
                                United States Magistrate Judge